CALVIN HALE v. STATE OF ARKANSAS

5-5409                                    440 S.W. 2d 550

Opinion Delivered May 19, 1969

990

*Don Gillaspie* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

CONLEY BYRD, Justice.    Appellant Calvin Hale appeals from a judgment sentencing him to 21 years for kidnaping and 10 years for robbery.    For reversal of the judgment he relies upon the following points:

"   I.   The confession introduced in evidence was improperly admitted.

"  II.   The court erred in refusing to provide funds for the expenses of preparation and trial or, in the alternative, dismissing the charges herein.

"III.   The court erred in giving court's instructions numbers 6 and 9."

The record shows that George C. James on April 11, 1967, was accosted by one Wade Eaves and appellant

Calvin Hale in his apartment in El Dorado. Eaves and appellant escorted James from his apartment to an automobile. After driving James to a wooded area where they waited awhile, they again put him in the automobile and took him to a public telephone. While appellant held a gun on James, Eaves dialed the banks where he knew James had money. As instructed, James told the bankers that he was in a business deal with Eaves and that he was going to give him some checks. After the telephone calls, James at gun point gave Eaves a check on the First National Bank for $4,600.00 and a check on the Exchange Bank for $10,000.00. They then returned to the wooded area and instructed James to sit down by a tree and put out his hands. Thereupon they bound his hands and feet around the tree with a roll of tape and gagged him with a handkerchief. After some effort, James freed himself and went to the sheriff's office. Other witnesses described appellant as the man with Eaves on the date in question.

Wade Eaves, an inmate of Cummins State prison farm, testified that he had been convicted of the crime of kidnaping George C. James. He identified Calvin Hale as the person with him when Mr. James was kidnaped and robbed.

The record shows that when appellant's confession was obtained he was serving a five year sentence in Leavenworth Federal penitentiary. The officers interrogating appellant were W. T. Brewster, an El Dorado Police detective, Beryl Anthony, deputy prosecuting attorney and Sheriff Homer Pirtle. Mr. Brewster, Sheriff Pirtle and Mr. Anthony all testified that while Anthony was giving the *Miranda* warning to appellant, appellant interrupted Anthony and said he probably knew more about his rights and the criminal law than Anthony knew. Mr. Anthony said that when they first arrived, appellant was brought into the room by the federal guards and accompanying appellant was a penitentiary advisor who told them that it was the rule that a person from the pen-

992

itentiary had to be in the interrogation room, if appellant so required. Anthony said that appellant at no time indicated he wished an attorney and in fact refused to make any statement to them as long as the advisor was present. In fact he said that appellant used some pretty harsh language to the advisor in requesting him to leave the room. All of the State's witnesses stated affirmatively that no promises or rewards were offered appellant to obtain his confession. The testimony is that when appellant suggested that he would like a sentence which would run concurrently with the five year one he was serving in the federal penitentiary, he was advised that they were not in a position to make such a deal.

Appellant Hale's testimony was that he didn't agree to answer all the questions and that he told Mr. Anthony that he didn't know whether he wanted to remain silent. He testified that he told Anthony we wanted an attorney. He said Mr. Anthony told him that the State of Arkansas was not going to press charges and that if they did, he would be given a five year sentence to run concurrently with the one he was serving and that he agreed to make the statement under those conditions. He had a bad reputation having been locked up all his life, hadn't been out two years all of his life. That because of his record he agreed to sign a statement for five years to run concurrently with the one he was serving. When asked to describe what was going on at the time the confession was written out, appellant said:

"A. I didn't even read it. The only thing that I remember is he asked me if I made any money out of it, if I was supposed to have gotten ten thousand dollars, or five thousand dollars, or some large sum of money, and I told him that I didn't get a nickel out of nothing. I also, I told him 'you just write down what you want to and I'll sign the statement regardless, because it cannot be used against me in court of

law because I do not have an attorney present.'
And I told him, 'anything that you write, in
fact, if I can get a five-year sentence from it to
run concurrently with the time I'm doing, I'll
clear your books. Just leave me alone. Other-
wise, I haven't got anything to say.' And I
was assured that I would receive a five-year
sentence if the State tried me.''

At the conclusion of a *Denno* hearing, the trial court
found that the confession was voluntarily given after
appellant had been advised of his constitutional rights.
In addition to the foregoing evidence the record also
shows that the state, at the request of appellant and pur-
suant to the Uniform Act to Secure the Attendance of
Witnesses from Without the State in Criminal Cases,
(Ark. Stat. Ann. §§ 43-2005—43-2009 [Repl. 1964]), sub-
poenaed four witnesses from Leavenworth prison whom
appellant refused to use.

We agree with the trial court that appellant had
effectively waived his constitutional rights and that the
confession was properly admitted into evidence. See
*Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S.
Ct. 1602 (1966).

Under point 2, appellant contends that the State
refused to provide him funds for the reasonable and
necessary expenses of trial and preparation for trial and
that it wrongfully refused to provide for the expenses for
examination of defendant by a private psychiatrist. We
find these contentions without merit.

The record shows that the trial court appointed a
most able trial lawyer, with experience in criminal law,
to represent appellant. The court had appellant moved
from Leavenworth penitentiary to Union County jail on
April 14, 1968. Appellant's trial did not begin until
Sept. 17, 1968. We cannot tell from the record whether
appellant remained in El Dorado during all that time

but obviously the State took precautions to see that appellant had an opportunity to consult with his attorney in ample time to prepare for trial. In addition the State endeavored, pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, to obtain every witness requested by appellant. In doing this we think the State discharged any burden or duty it owed appellant.

Furthermore, the record shows that the State did furnish to appellant the services of a psychiatrist. The psychiatrists furnished to appellant were selected by the State not for criminal work but for treatment of mental diseases. The State Hospital staff is only incidentally used to determine mental competency of criminal defendants. Selection of psychiatrists on the State Hospital staff is done by the Governor or through his appointees and is not in any way controlled by the persons charged in this State with prosecuting criminal defendants. Under this procedure we can find no denial of due process or equal protection of the laws to the prejudice of appellant.

Surely due process of law does not require the State to furnish expenses for appellant to shop from doctor to doctor until he finds one who considers him mentally incompetent. Appellant has cited us no law to support such proposition, nor have we found any. For this reason and the reasons stated above we find no merit in appellant's point No. 2.

On appeal appellant complains that the trial court erred in giving its instructions Nos. 6 and 9. Instruction No. 6 defined kidnaping in the statutory language of Ark. Stat. Ann. § 41-2301 (Repl. 1964). Appellant now argues that the instruction is abstract and was confusing to the jury because it included, "the taking of a person into another state or territory and transporting a person for the purpose of thwarting arrest or detection." The instruction as given is not inherently erroneous and

since appellant made no objections either general or specific to the giving of the instruction, we find his contention to be without merit.

Appellant's objection to the trial court's instruction No. 9 on the necessity for corroboration of an accomplice's testimony is that by the careless use of a simple pronoun the instruction completely fails to carry the meaning of the rule it was intended to set out. This argument is made because a portion of the instruction reads as follows:

"A conviction cannot be had upon the testimony of an accomplice unless you find that *his* testimony is corroborated by other evidence, either by direct or circumstantial evidence tending to connect *him* with the crime."

Again there was no objection to the instruction as given. Even if there had been, we find that the supposed error is cured by the balance of the instruction which tells the jury as follows:

"The other evidence or corroboration is not sufficient if it merely shows the facts and circumstances that the offense was committed, but it must go further and show in the affirmative that the defendant was connected with the crime and the commission of it."

Affirmed.