CLAUDE EARL FLAHERTY AND GENE WHIPPLE
*v.* STATE OF ARKANSAS

CR 73-70                                        500 S.W. 2d 87

Opinion delivered October 1, 1973
[Rehearing denied November 9, 1973.]

*Franklin Wilder,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *James W. Atkins,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The appellants were charged and convicted of operating a gambling house in violation of Ark. Stat. Ann. § 41-2001 (Repl. 1964). The jury assessed a one year penitentiary sentence for each of them. For reversal of the judgment, the appellants first contend

there was no gambling conducted at appellant Flaherty's home and, therefore, the evidence was insufficient to support a conviction for operating a gambling house.

The state adduced evidence that for approximately three weeks the police had observed Whipple driving Flaherty's car during which time he was picking up and delivering parlay cards. The police, with a search warrant, went to Flaherty's residence where they were invited in. The search warrant was exhibited and both appellants, the only occupants, were placed under arrest. The officers then discovered parlay cards, betting slips, racing forms, and a stack of football schedule sheets. For approximately one hour, an officer answered and tape recorded all incoming telephone calls. These calls were mostly from people placing bets on football games and horse racing. The callers would identify themselves either by first name or initials. Some would ask to speak to Earl (appellant Flaherty) and some would ask for Whip (appellant Whipple). During this hour two individuals appeared at the residence and upon police inquiry it was determined they had in their possession a weekly football schedule. As a result of the raid the police confiscated and introduced into evidence one telephone listed in Flaherty's name and another in a relative's name; a small indexed code book containing unidentified numbers; envelopes containing a large quantity of what appeared to be betting slips with "numbers" on them; numerous parlay cards and parlay card stubs; a roll of money wrapped with a rubber band ($1,174); a sack containing 121 weekly current football schedule sheets; racing forms; and an envelope with telephone bills. The appellants did not testify.

On appeal we review that evidence which is most favorable to the appellee with all reasonable inferences deducible therefrom and we must affirm if there is any substantial evidence to support the finding of the trier of the facts. *Miller* v. *State,* 253 Ark. 1060, 490 S.W. 2d 445 (1973). In the case at bar, we are of the view that the evidence was amply substantial to sustain the findings of the jury.

The argument is further made that Flaherty's home could not constitute a gambling house since he had lived for many years in a nice residential area and his neighbors testified they had observed no gambling activities about his premises. This was a fact question to be considered by the jury. Furthermore, in *Liberto & Mothershed* v. *State,* 248 Ark. 350, 451 S.W. 2d 464 (1970), we said "the keeping of a gambling house is not limited to a place where those engaged in gambling find shelter."

Appellant next asserts that the admission of the telephone recordings into evidence was error. The police officer placed a suction cup, or recording device, on the mouthpiece of the telephone receiver. Whenever the phone rang the conversation was recorded. The portable cassette tape recorder was admitted into evidence and the recorded conversations, between the officer and the callers placing bets, were heard by the jury. The appellants contend that the recordings were inadmissible hearsay and in violation of the Federal Communications Act, 47 U.S.C. § 605, and further the introduction of the evidence denied appellants their Sixth Amendment right to confront witnesses against them. We cannot agree.

In *Liberto & Mothershed* v. *State, supra,* the officer answered incoming telephone callers placing bets. We approved the admissibility of the officer's testimony as being permissible to show that the out-of-court statement "***is not hearsay if it is given in evidence for the purpose of proving that the statement was made, providing that the purpose is otherwise relevant in the case at trial. The statements here given were obviously relevant to show the use of the telephone numbers involved." Similarly, in the case at bar, the officer could have testified as to the conversations he heard since such testimony is not introduced to support the truth of the matter asserted, but only to show that such statements were made. On the same basis, the tape recorded conversations were admissible.

Appellants also assert that the tape recording was inadmissible as being in violation of Federal Communications Act, 47 U.S.C. § 605. We examine this contention

in the light of 18 U.S.C. § 2510, et. seq., which is the wire interception provision of the Omnibus Crime Control and Safe Streets Act. That section is the 1968 amendment to 47 U.S.C. § 605. In the case at bar, we consider § 2510, et. seq., controlling. The question then becomes whether the officer at the Flaherty residence improperly "intercepted" the communication in violation of 18 U.S.C. § 2511, which would render the contents of the communication inadmissible in a court of law as required by 18 U.S.C. § 2515. "Intercept" is defined in § 2510 as meaning the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." The authorities are to the effect that testimony repeating the contents of police answered telephone calls during a valid search is admissible in evidence pursuant to either § 605 or § 2511.

In *United States* v. *Pasha,* 332 F. 2d 193 (7th Cir. 1964), a government agent was assigned to answer calls to an apartment during the search. The contents of those calls were testified to during defendant's prosecution for failure to pay an occupational tax on gambling. The testimony was held relevant, not hearsay, and admissible as circumstantial evidence of the type of operations conducted on the premises. Further, the officer's impersonation of defendant was held not to constitute an "interception" under 47 U.S.C. § 605. See, also, *Rathbun* v. *United States,* 355 U.S. 107, 78 S. Ct. 161, 2 L. Ed. 2d 134 (1957).

The 1968 enactment of 18 U.S.C. § 2511 (2) (c) provides:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

As we construe this section, it cannot be said that the officer in the case at bar illegally intercepted the telephone communications.

A most recent case on this subject is *State* v. *Vizzini*, 115 N.J. Super. 97, 278 A. 2d 235 (1971). There the defendant was convicted of permitting his premises to be used to conduct a lottery. During a valid search of defendant's home an induction coil (like the one used in the case at bar) was placed on the phone to record incoming calls. The callers placed bets. The defendant objected, as here, to the introduction of the tape at trial. The New Jersey court held that no interception had taken place, making the same distinction that was utilized in interpreting the old act 47 U.S.C. § 605, *supra*:

> "Castellano's [the police officer] acquisition of the contents of the telephonic communications resulted from his answering the telephone when it rang, not 'through the use of any electronic, mechanical or other device.'

> "In answering the telephone when it rang, he did not 'intercept' the telephone calls in violation of the federal act." (See *Rathbun* v. *United States*, 355 U.S. 107, 78 S. Ct. 161, 2 L. Ed. 2d 134 (1957).)

Similarly, in the case at bar, the taped recordings were admissible since the incoming calls were not intercepted and recorded in violation of any federal act. We need not deal in fine distinctions as to the meaning of the word "intercept," since 18 U.S.C. 2511 (2) (c), *supra*, clearly states that no illegal interception takes place when an officer is a party to the communication acting under color of law. The device on the telephone receiver recorded conversations the officer legally heard and could have testified to from memory.

Nor can we agree with appellants' argument that presenting the taped conversations to the jury was a violation of their Sixth Amendment right to confront the witnesses against them. The officer, who took the incoming calls and recorded them, testified and was subjected to cross-examination. As previously discussed the tapes reproduced the voices of those placing bets and were admissible to show that such statements (calls) were made. We perceive no violation of the confrontation clause.

Appellants further contend that the trial court erred in refusing their instruction which would allow the jury to consider a conviction under Ark. Stat. Ann. § 41-2003 (Repl. 1964) (misdemeanor statute for keeping a gaming device). Appellants assert that they were entitled to this instruction because keeping a gaming device is a lesser included offense within the alleged offense of operating a gambling house.

The intricacies of lesser offenses in Arkansas were recently explored at length in *Caton & Headley v. State,* 252 Ark. 420, 479 S.W. 2d 537 (1972), and need not be repeated here. There we said that in order to find error in the refusal of the trial court to give a requested lesser offense instruction it must appear that the offense in the requested instruction was one necessarily contained within the higher offense and the evidence showed the existence of all the elements of the lesser offense. So in *Caton, supra,* it was not error to refuse a shoplifting instruction where the information did not charge that the merchandise taken was offered for sale by a store or other mercantile establishment which are elements required by Ark. Stat. Ann. § 41-3939 (Repl. 1964). In *Caton, supra,* we further said:

"Unless the lower offense is necessarily included within the higher, there is no reason why the prosecuting attorney or the grand jury should not have the option of charging the more serious offense and ignoring the latter."

In the instant case defendants were charged with operating a gambling house. The mere possession of gambling devices is not necessarily included within that offense. One could be criminally liable under the statute for allowing gambling in his house but have no gambling devices there (for example, matching coins, tossing pennies, betting on football games or horse races). Even if we were to find that the evidence seized here constituted gambling devices, since the information did not so charge and since the misdemeanor statute is not necessarily included in the felony statute, we hold the trial court did not err in refusing the instruction although it would not have constituted error to give it.

As was noted similarly in *Caton, supra,* we are not saying that there cannot be a conviction for possession of gambling devices based upon a charge of operating a gambling house. Such a conviction might be possible if the charge alleges the elements of the lesser offense and the evidence would support the conviction. Furthermore, a defendant can always request a bill of particulars to determine the specific acts alleged to constitute the particular offense. Ark. Stat. Ann. § 43-1006 and § 43-804 (Repl. 1964).

Appellants also contend that the trial court erred in refusing their instruction to the effect that every man's house or place of residence is deemed in law as being his castle. Ark. Stat. Ann. § 41-2233 (Repl. 1964). This statute appears in the homicide section of Title 41 and is no doubt intended to emphasize the sanctity of the home in relation to self-defense and the retreat doctrine. The argument appellants present is novel. However, it is irrelevant because the conviction is based on substantial evidence which was lawfully seized. The trial court is not required to give abstract instructions which are not germane to a fact issue. *Stevens* v. *State,* 246 Ark. 1200, 441 S.W. 2d 451 (1969). Neither can we agree that appellants' counsel was erroneously stopped by the court from presenting the argument to the jury that one's home is his castle with the right to have and read racing forms since the record does not include that part of the proceedings or any portion of the arguments to the jury.

Finally, appellants assert that the evidence taken from Flaherty's home was based upon an illegal search. The search warrant was issued by the trial judge based upon an affidavit of a policeman and one by a deputy prosecuting attorney. At a hearing on a motion to suppress, the appellants adduced evidence from some witnesses who contradicted the statements made by the affiants. One of the affiants, the deputy prosecuting attorney, was called as a witness for the appellants. The deputy had stated in his affidavit that Flaherty was a known gambler. He testified at the hearing that to his knowledge neither appellant had ever been convicted of gambling and he had no personal knowledge of the cor-

rectness of the telephone bills attached to his affidavit. The appellee presented no witnesses and stood upon the affidavits. Appellants make the argument that there was no probable cause for the issuance of the search warrant. We cannot agree.

The officer's affidavit was to the effect that he and another officer had made an "extensive investigation of gambling operations" locally; he had information that a local printing company "printed parlay cards which were being used for betting on college and professional football games;" he had information that Flaherty had 1,250 parlay cards printed weekly by the local printer and Whipple "was a runner for Flaherty;" Whipple was observed leaving Flaherty's residence; Flaherty's car, driven by Whipple, had been followed and observed by him and another officer, stopping at various places picking up and leaving parlay cards; and Whipple was seen by him leaving the printing company with parlay cards in his hand. The deputy prosecuting attorney's affidavit was to the effect that during his four years as deputy he had "worked on several cases involving gambling activities" locally; the police had given him continuing reports about their investigation of local gambling activities; appellant Flaherty and his nephew, Billy Reeder, were co-defendants in 1969 on a charge of operating a gambling house; Flaherty was acquitted and Reeder was convicted, receiving a suspended sentence which was later revoked because of his continued gambling activities; that during the revocation hearing, there was evidence Flaherty and Reeder had maintained frequent telephone contacts with each other by intra-city or long distance calls; a charge of operating a gambling house against Flaherty in an adjoining county was dismissed because of a defective search warrant; and the current telephone records of Flaherty and Reeder reflected approximately 150 intra-city or long distance calls between them for about three months prior to the raid of Flaherty's premises. These current phone records were made a part of the deputy prosecutor's affidavit.

An affidavit based upon hearsay information can be a basis for the issuance of a valid search warrant. *Jones*

v. *United States,* 362 U.S. 257, 80 S. Ct. 725 (1960). There
the court said:

> "We have decided that, as hearsay alone does not ren-
> der an affidavit insufficient **** so long as there
> was a substantial basis for crediting the hearsay."

To the same effect is *Aguilar* v. *Texas,* 378 U.S. 108
(1964); *Spinelli* v. *United States,* 393 U.S. 410 (1969);
*U. S.* v. *McClard,* 333 F. Supp 158 (E. D. Ark. 1971); *Glov-
er* v. *State,* 248 Ark. 1260, 455 S.W. 2d 670 (1970).

The authorities, as succinctly reviewed in *McClard,*
*supra,* are also to the effect that the affidavit for a search
warrant is sufficient if it relates facts which are sufficient
to persuade the examining court, acting as a reasonable
person, to believe probable cause exists that a law viola-
tion is occurring on the premises to be searched. The
affidavit need not assert facts which establish conclusively
or beyond a reasonable doubt that a violation of the law
exists on the premises. Probable cause exists where know-
ledge of facts or circumstances is imparted to the exam-
ining court sufficient to persuade an ordinarily prudent
person to actually believe in good faith, as opposed to
mere suspicion, that the facts asserted in the affidavit are
true. The examining court has the right to give at least
some credence and weight to an experienced law enforce-
ment officer because of his expertise. The judicial deter-
mination by the examining court that probable cause
exists for the issuance of a search warrant is entitled to
considerable deference and weight by a reviewing court.

In the case at bar, the affidavits were based upon in-
formation acquired during an extensive and continuous
investigation as well as upon personal observations of
experienced law enforcement officials. We cannot agree
that contradictory evidence adduced by appellants at the
hearing on the motion to suppress vitiated the search
warrant. See, *Liberto* v. *State, supra.* We hold that the
affidavits constituted a substantial basis to support the
examining court's judicial determination that probable
cause existed for the issuance of the search warrant.

Finding no error, the judgment is affirmed.

Affirmed.