Theotis MAXWELL *v.* STATE of Arkansas

CR 75-36                                          531 S.W. 2d 468

Opinion delivered January 19, 1976

*Robert E. Irwin*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Gary Isbell*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This case was tried on a capital felony murder charge. It was alleged that appellant Theotis Maxwell and one Lee Otis Harris had beaten Ellis Robb, an elderly storekeeper to death during a robbery at his store. On appeal from a sentence to life imprisonment without parole, Maxwell originally asserted only two points, both having to do with procedures pertaining to the selection of the jury which found him guilty and fixed the sentence. We find that there was substantial compliance with the requirements of the governing statute, as against the objections made by appellant.

The jury wheel was quashed on motion of appellant and his co-defendant, who was tried separately. The circuit judge discharged the commissioners who had selected the names placed in that wheel and named four new commissioners,

who selected approximately 600 names for a new wheel, from which the panel of jurors for the trial of Maxwell was drawn. Appellant objected specifically to three persons whose names were included in both wheels. Appellant challenged two of these peremptorily, but the third was seated after appellant had exhausted all his peremptory challenges. Appellant did, however, object to the procedure, contending that, when the original jury wheel was quashed, the court was required to select a panel of jurors for the trial of the particular case. Ark. Stat. Ann. § 39-214 (Supp. 1973) provides, in pertinent part:

> If the trial judge sustains the challenge to the use of the names in the jury wheel or box for the drawing of trial jurors, he shall appoint a jury commission of not less than three persons, qualified and sworn as commissioners under the requirements of this Act [§§ 39-101 — 39-108, 39-201 — 39-220], to select a sufficient number of persons possessing the qualifications of jurors as set forth in this Act §§ 39-101 — 39-108, 39-201 — 39-220], and in such numbers as the Judge shall designate, which list of persons upon being summoned shall constitute the panel of jurors for the trial of the cause. If such panel is exhausted prior to the formation of the trial jury for any reason, the commission shall be reconvened and additional names placed on the list to be summoned as special jurors in such numbers as is deemed necessary to complete the jury for the trial of the cause.

The four newly appointed jury commissioners were instructed by the circuit judge to select 600 to 625 names for jury service. It does not appear that they were told that the list would be used for any particular trial or trials. Some of them knew that a previous jury panel had been quashed, but there was no evidence that they knew any of the names on that panel. The list prepared was sealed by the commissioners and delivered to the circuit court clerk. It was stipulated that these commissioners were not furnished a list of the names of the persons constituting the quashed jury wheel, but the names of all jurors on the panel which had been drawn from the quashed wheel, who had actually served as jurors, were included in the list of persons ineligible

because of previous jury service.

It is the clear intent of the section of the statute upon which appellant Maxwell relies to leave to the discretion of the trial judge the number of persons to be selected by newly appointed jury commissioners to constitute the panel for the trial of a case after the jury wheel has been quashed. The naming of the commissioners was in compliance with the statute. It was not an abuse of discretion for the trial judge to require a list of 600 or more names in a case in which the jury was to be qualified for the death penalty. The names called to be qualified as jurors in the case were apparently drawn at random from this list and the jury chosen from 148 names so drawn. Appellant has not shown how he was prejudiced by the procedure followed, and we cannot conceive of any prejudice that might have resulted.

It does not clearly appear whether the three jurors were on the original panel drawn from the jury wheel or whether they were merely included on the master list constituting the jury wheel. At least, the objection to the juror seated was stated as being based on the fact that her name was on the panel. The matter is of no consequence, however, because there is no prohibition against selection of any particular name which may have appeared in either the wheel or the panel, nor do we know of any reason why there should be. The persons disqualified are those who have served as jurors during the preceding two years. Ark. Stat. Ann. § 39-103 (Supp. 1973).

The record does not disclose the particular ground on which the jury wheel was quashed, but, as we understand the record, it was on a basis that invalidated the entire wheel, and not just the panel drawn from it. The appearance of only three names on either the new list of 600 or on the first group drawn from it certainly is not indicative of a subversion of the process such as that condemned in *Thomas* v. *State*, 238 Ark. 201, 379 S.W. 2d 26, where, before the enactment of the Jury Wheel Act [Ark. Stat. Ann. § 39-201, et. seq. (Supp. 1973)] a panel summoned by the sheriff consisted of 32 of the 38 members of the panel which had just been quashed.

Other objections made but not originally argued by appellant have given us some concern, but we find no reversible error.

An objection was made to a search warrant for the residence in which appellant Maxwell lived because the supporting affidavit stated only the conclusions of the officer making it, without giving his basis for believing them to be true when not all of them could have been within the personal knowledge of the affiant. If this affidavit had been the only record of the evidence before the municipal judge who issued the warrant, we would have no alternative to quashing the warrant and the evidence disclosed by the search. But this is not the case. The municipal judge properly examined the affiant under oath and the questions and answers were recorded and signed by the officer. The officer testified that a person named Harris who had been arrested for the crime, had informed the officer of the description and location of clothing he had worn during the commission of the crime and the description of the clothing worn by Maxwell. He also said that Harris had told him that he had seen Maxwell hide $400 and a quantity of change between the mattresses of Maxwell's bed and that the clothing Maxwell had worn during the commission of the crime was at Maxwell's home. The officer testified that Maxwell's home was the residence of his stepfather, Tolley McVey, Jr. This was the house for which the search warrant was issued and from which the incriminating evidence was seized.

Ark. Stat. Ann. § 43-205 (Supp. 1973) authorizing the issuance of search warrants is not so restrictive as to require that the finding of probable cause by the magistrate be based solely on a single affidavit originally presented. We have said that the act eliminates from consideration any oral testimony unless it is reduced to writing and accompanied by affidavit. *Cockrell* v. *State*, 256 Ark. 19, 505 S.W. 2d 204. In order to be an affidavit an instrument must be reduced to writing and sworn to or affirmed before some person legally authorized to administer oaths. *Thompson* v. *Self*, 197 Ark. 70, 122 S.W. 2d 182. The procedure followed here complies with the requirements of the statute. In *Thompson*, we quoted with approval a definition of an affidavit as "any voluntary ex parte

statement reduced to writing and sworn to or affirmed before some person authorized to administer an oath or affirmation."

Appellant argues that the reliability and credibility of the officer's informant was not sufficiently established to support a finding of probable cause for the search based upon statements made by him to the officer. We unhesitatingly find that the mere fact that Harris's statement was self-incriminating was an adequate basis for according reliability and credibility to the informant and a logical basis for the hearsay statements of the officer and his conclusions. *Flaherty & Whipple* v. *State*, 255 Ark. 187, 500 S.W. 2d 87. There was sufficient basis for the municipal judge's finding of probable cause.

Appellant seems to have asserted objections to the list of jurors from which the jury was drawn on the basis of discrimination against members of the black race and people of all races under the age of 22 years. We are not favored with the makeup of the jury or the list of 148 names from which it was drawn. There was evidence from some of the commissioners that some persons aged 18, 19, 20 and 21 years were included in the list of 600. There was also testimony that the names of a number of black persons were included, and that black persons under the age of 21 years were on the list. The commissioners were properly instructed and knew that persons of the age of 18 years and over were eligible to serve, and that people of all races, creeds and colors should be selected by them. At least one of the commissioners was a member of the black race, had acquaintances aged 18 to 21 years who were black, and submitted the names of at least ten such persons (along with a number of names of white persons in that age group) which were included on the list.

The evidence falls far short of the quantum of proof required for the prima facie showing of discrimination in the jury selection, which would place the burden of proof on the state to show the contrary.

An oral confession by appellant was introduced. A Denno hearing was held and the confession admitted as volun-

tary. At the hearing it was disclosed that:

> On the morning following the crime, he was arrested at his home without a warrant and informed that the arrest was for robbery and murder. The arrest was based upon collective information gathered by the investigating officers of the Conway County Sheriff's office and the Arkansas State Police. The confession was given by Maxwell a short time after he had signed a waiver of constitutional rights at 7:30 p.m. on the day of his arrest. Prior to the signing of the waiver, the Miranda rights had been explained to Maxwell in great detail by Sgt. Lester of the Arkansas State Police and he clearly appeared to understand. Police interrogation commenced immediately after the waiver was signed. Sgt. Lester took written notes of Maxwell's answers. Sgt. Baker and Lt. Evans of the Arkansas State Police were present. According to Sgt. Baker, a summary of Maxwell's statement, omitting irrelevant parts, was dictated in Baker's presence shortly after the interview was concluded by Sgt. Lester from the notes Lester had prepared during the interview. The summary was thereafter transcribed and typed in state police headquarters.

Baker, Lester and Evans all testified during the Denno hearing. Although Maxwell later took the witness stand during the trial and controverted, not only the confession, but the testimony about its voluntariness, the testimony of the officers was not controverted at the Denno hearing in any way. Perhaps appellant's attorney felt that there would be a tactical advantage in submitting the question to the jury without the prosecuting attorney having previously heard Maxwell's version at the Denno hearing. At any rate, we can find no evidence at this hearing to contradict the undisputed evidence that the statements were made to the officers voluntarily and that Maxwell knowingly and intelligently waived his constitutional right to the assistance of counsel and his privilege against self-incrimination. We certainly cannot say that the trial court's finding that the presumption of involuntariness had been overcome was clearly against the preponderance of the evidence.

There are several written motions by appellant in the record. One of them requested that the court assign three unbiased investigators to assist in the defense but to be paid by the state. This seems to have resulted in a pretrial enhancement of the fees allowed to appellant's appointed counsel, but no other action was indicated. Another motion asked that a private psychologist be provided to test Maxwell's mental capacity. We have heretofore sustained the denial of such requests. *Hale* v. *State*, 246 Ark. 989, 440 S.W. 2d 550; *Grissom* v. *State*, 254 Ark. 81, 491 S.W. 2d 595; Cf. *Alexander* v. *State*, 257 Ark. 343, 516 S.W. 2d 368. For the same reasons, we sustain this one. We add that a defense of insanity was not asserted and that a complete mental observation had been made by the staff of the Arkansas State Hospital.

Obviously, appellant's objection to the sustaining of the state's challenges for cause to jurors who would not consider the death penalty was rendered moot by the jury verdict.

The court denied a motion for mistrial based upon the fact that the victim's daughter, who discovered his body and evidence of the robbery, disclosed that she and an employee of one of the jurors had arrived at the scene simultaneously and that he had remained at the store while she went home to better clothe herself and report the matter to her husband and until an ambulance and the officers arrived. It was established on cross-examination that she saw no one other than this employee near the scene before the officers arrived. The name of this person had not been furnished to appellant on the list of state's witnesses requested by him. We find no abuse of discretion for the reason that, when the motion was not made until after appellant's attorney had cross-examined the witness about the matter, the prosecuting attorney explained that the name had not been furnished because the state did not intend to call the employee due to the fact his testimony would have been cumulative only and for the further reason that the court permitted appellant's attorney to question the juror extensively about the possible prejudice. During this examination in chambers, it was actually disclosed that both the person named in the testimony and the juror were among approximately 50 employees of the same corporation, and that both worked directly under the supervi-

sion of the juror's father. The juror stated that the employee had never discussed the matter with him, and that he had not known that this employee was a witness or had anything to do with the matter. In response to the judge's questioning, he stated that he would not give this person's testimony any more credence than that of any other witness if he should be called as a witness by either side.

There were numerous objections to the introduction of evidence to which we have given our attention, but we find no reversible error in any of them and no purpose in discussion of most of them. Appellant objected to the introduction of a billfold found in the attic of his grandfather's home in the execution of the search on the ground that it was not listed on the return as an item seized. Yet Sgt. Baker, who made the search, positively identified it as an item found in the search and in which he said he found $392 in currency. The contents of the billfold were listed on the return. This omission went only to the credibility of the witness and the weight to be given his testimony and not to admissibility of the evidence, and admission of the evidence was not violative of due process, since the making of the return is only a ministerial act. *People* v. *Schmidt,* 172 Colo. 285, 473 P. 2d 698 (1970); *Williams* v. *State,* 95 Okla. Cr. 131, 240 P. 2d 1132, 31 ALR 2d 851 (1952); *United States* v. *Greene,* 141 F.S. 856 (1956); *Evans* v. *United States,* 242 F. 2d 534, cert. den. 353 U.S. 976, 77 S. Ct. 1059, 1 L. Ed. 2d 1137 (1957).

We have reviewed other objections made by appellant during the course of the trial, as we do in cases where life imprisonment is imposed. We do not find any prejudicial error and see no purpose in discussing each such objection at length.

Since we find no prejudicial error the judgment is affirmed.