Santos Cammeloj GARCIA *v.* STATE of Arkansas

CA CR 85-192                                        711 S.W.2d 176

Court of Appeals of Arkansas
Division I
Opinion delivered June 11, 1986

*John R. VanWinkle*, for appellant.

*Steve Clark*, Att'y Gen., by: *Jerome T. Kearney*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Judge. Appellant appeals his conviction of aggravated robbery. He was sentenced to a ten year term in the Department of Correction as a habitual offender. For reversal, he contends that the trial court erred by (1) refusing to suppress a search warrant and the items seized pursuant to the search, (2) denying appellant's request to call, as witnesses, the prosecutor and an attorney for an accomplice for the purpose of impeaching the accomplice's testimony, and (3) allowing into evidence, at the habitual offender proceeding, prior convictions appellant claims involve guilty pleas that were involuntary.

On July 3, 1984, Robert Jeffrey Wells robbed Orville's Mini Mart in Fort Smith at gunpoint. Wells fled on foot to a nearby apartment, and police arrested him there within thirty minutes after the robbery. While in custody, Wells gave a statement in which he described how that morning, Chris Smith and appellant came to his apartment, and appellant accused Wells of breaking into his car. Wells stated the appellant demanded money to repair the car, pulled a gun on Wells, and said he was going to "stick with" Wells until he obtained the money. They went to appellant's apartment, and then to a body shop for an estimate of the damage. Wells related they returned to appellant's apartment where appellant got some purple pantyhose, and told Wells that Wells was going to rob someplace. Appellant held a gun on Wells, and gave Wells another gun. Wells's statement further reflected that he went into a store, and the owner put money into a Crown Royal sack which appellant had given Wells. As Wells fled the scene, he saw appellant sitting in his car across the street. Wells went to Smith's apartment, which was directly above appellant's, and then went down to appellant's apartment. Wells said that appellant instructed him to change shirts and Wells then gave appellant the money. Wells subsequently returned to Smith's apartment where he was arrested.

Based upon Wells's statement, a search warrant was issued

for appellant's apartment. In the apartment, officers found (1) a brown pullover shirt matching the description of the shirt Wells wore during the robbery, (2) a mitten stuffed with $399.00 inside the toilet water tank, and (3) a Crown Royal bag behind the bar. Appellant moved to have the items suppressed because the affidavit for the search warrant did not specify the basis for Wells's reliability as an informant. To support this assertion, appellant cites *Little Rock Police Department v. One 1977 Lincoln Continental*, 265 Ark. 512, 580 S.W.2d 451 (1979), and *Lunsford v. State*, 262 Ark. 1, 552 S.W.2d 646 (1977). Both cases are distinguishable because neither case involves a situation where the informant gave self-implicating statements to the police.

More applicable to the facts of this case is *Maxwell v. State*, 259 Ark. 86, 531 S.W.2d 468 (1976), wherein the supreme court stated that:

> [W]e unhesitatingly find that the mere fact that Harris's statement was self-incriminating was an adequate basis for according reliability and credibility to the informant and a logical basis for the hearsay statements of the officer and his conclusions.

*Id.* at 92. *See also United States v. Harris*, 403 U.S. 573 (1971), at 583. Here, Wells admitted to robbing a store, and he testified that he understood he could be sentenced to life in prison. Under these facts, we hold that there was probable cause for the trial court to issue the search warrant based on Wells's statement, and that the items found pursuant to the search were admissible.

Next, appellant contends that he should have been allowed to impeach Wells's testimony that he had not been promised leniency by the State in return for his testifying against the appellant. On cross-examination, appellant's attorney asked Wells if he had any expectation of leniency for his testimony, and he replied, "[n]o sir." Wells further stated that he understood he was implicating himself to a possible life sentence, and that his sole purpose for testifying was to tell the truth. In presenting his case, appellant attempted to call both Wells's attorney and the prosecutor as witnesses to impeach Wells's testimony. Wells's attorney resisted, claiming the attorney-client privilege, and the prosecutor responded arguing such testimony was irrelevant and

inappropriate because it concerned a collateral matter. The trial judge denied appellant's request to call Wells's attorney and the prosecutor, but allowed appellant to proffer what he thought their testimony would be, *viz*, he anticipated they would testify Wells was offered leniency in exchange for Wells's testifying against appellant.

■■ While we may agree—without deciding—that the testimonies of Wells's attorney and the prosecutor were not excludable as collateral matter or privileged communication, we hold the trial judge's ruling was correct for another important reason: Appellant's request was untimely. On this point, we cite the familiar law that, while the trial judge may have given the wrong reason, we will not reverse the ruling if it gives the correct result. *Morrison* v. *Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981).

On June 27, 1985, appellant diligently filed his discovery motion, seeking from the State all the information to which he was entitled under Rule 17 of the Arkansas Rules of Criminal Procedure. Among other things, appellant requested a list of the State's witnesses and any material or information which tended to negate the guilt of the appellant or to reduce his punishment. The State responded stating Wells would be one of its eleven witnesses, and it provided written statements given by both Wells and appellant relating their respective stories of the robbery. In fact, the appellant, at a pre-trial suppression hearing, cross-examined an officer who had investigated the robbery and emphasized that portion of Wells's statement that reflected Wells made it "with full knowledge of his penal interest . . . knowing full well he was probably going to be charged with robbery."

In sum, the record clearly reflects appellant was aware that Wells would be called as a witness and his credibility would be in issue. Nonetheless, appellant waited until the end of his case to call the prosecutor and Wells's attorney in appellant's efforts to impeach Wells's story.

Rule 17.1(d) requires the prosecutor to disclose that evidence which is favorable to a defendant on issues of guilt or punishment. Here, the prosecutor, prior to trial, gave appellant certain written statements and information and indicated he had no other information which would negate appellant's guilt or reduce his punishment. Rule 17.1 further requires a defense

counsel to make a timely request of discoverable material and information. Under the circumstances in this cause, we must conclude that appellant simply failed to make his request in a timely manner. To hold otherwise would approve of trial tactics that would disrupt the proceedings when such information clearly was available through timely, pre-trial discovery.[1]

Finally, appellant argues that the trial court erred at the habitual criminal proceeding by admitting into evidence certain prior convictions the appellant claims involve involuntary guilty pleas. The State offered two penitentiary commitments showing appellant had previously been convicted of robbery and burglary. Appellant objected, stating he had filed a Rule 37 action against his former attorney on the grounds that he did not understand what he was doing by entering guilty pleas.

In *Gilbert* v. *State*, 277 Ark. 61, 639 S.W.2d 346 (1982), the supreme court held that where Gilbert had entered pleas of guilty and then later claimed innocence with respect to some of the established prior convictions, his claim of innocence was irrelevant to the use of those prior convictions when determining his habitual criminal status. We believe that holding is binding here.

Because we find no error in the proceedings below, we affirm.

Affirmed.

CORBIN, J., and WRIGHT, Special Judge, agree.

---

[1] For illustration purposes, if the prosecutor had been required to testify and did so favorably for the appellant, the prosecutor would then be confronted with whether he could complete the State's case. If, on the other hand, appellant had called the prosecutor as a witness before trial, the prosecutor, assuming he gave testimony favorable to appellant, could then make arrangements for someone else to present the State's case at trial.