## GEORGE Z. CUFFIA *v.* STATE OF MARYLAND

[No. 471, September Term, 1971.]

*Decided February 17, 1972.*

The cause was argued before MURPHY, C. J., and THOMPSON and GILBERT, JJ.

*Alan M. Wolf* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and

*Thomas Howard, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

George Z. Cuffia, appellant, was convicted in a non-jury trial, by Judge David Ross in the Criminal Court of Baltimore, of violation of the lottery laws of this state. Appellant was fined $1,000.00 and sentenced to a term of one year under the jurisdiction of the Department of Correctional Services.

The question presented by the appeal to this Court is whether or not the arrest and subsequent search of the appellant were legal.

Officer Joseph Mitchell, of the Baltimore City Police Department, who has five years experience and has participated in twenty investigations involving violations of lottery laws, testified that on the morning of May 6, 1971, he received information from an informant that a man "* * * between 55 and 60 years old, who had on a gray suit and black umbrella, * * *" was writing "numbers in the vicinity of the 900 block of West Lexington Street and the 200 block of Amity Street." The officer stated that the informant was reliable in that he had previously given information to the officer that led to the arrest of "two lottery violators and 8 narcotic peddlers." The officer also said that the informant had advised him that he, the informant, had played numbers with the man that the informant had described. Within 15 to 20 minutes after receiving the information, Officer Mitchell, accompanied by Officer Webb, went to the geographical location related to Officer Mitchell by the informant, and there they observed a man dressed in the manner described by the informant. Officer Mitchell said that we "* * * watched him, and he left from the 200 block of Amity Street, and went north of Amity Street to about halfway, about a quarter of the block. That's where you can make an entrance into the Poe Homes at that location. At which time we watched him come back

south into the Poe Homes, and he went into several Poe Homes, staying only about maybe a minute or a minute and a half, or two minutes." The officer continued his testimony saying, "Well, we continued to watch him, and then he went into the last, I say, about the third home, inside the Poe Homes are several apartments, about three, on the west side of the street, about three houses from the corner, he went in there and came back out. *He had a piece of paper in his hand."* (Emphasis supplied). Officers Mitchell and Webb alighted from the automobile in which they had been sitting and further observed the appellant. Officer Webb approached the appellant from the rear and Officer Mitchell went around the block and approached the appellant from the front. Officer Mitchell had his badge in his hand as he approached the appellant. The appellant then put his right hand to his mouth. The officer grabbed the hand, bringing it away from the mouth, and observed a piece of paper in the hand. The paper was introduced in evidence and contained 125 numbers representing $40.99 in play.

The appellant argues that there was no probable cause for the police officer to arrest appellant and hence under the theory of the "fruit of the poison tree" the subsequent recovery of the paper upon which the numbers were written would, of necessity, be inadmissible.

The informant's statement that he had "played numbers" with the person described by the informant was against informant's own penal interest inasmuch as Article 27, § 240, proscribes the placing of a bet, wager or gamble by any means and imposes sanctions of a fine of not less than $200.00, nor more than $1,000.00, and imprisonment for not less than six months, nor more than one year. See *United States v. Harris,* 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971), for the effect of an informant's statement against penal interest.

We think the factual situation here presented falls squarely within *Draper v. United States,* 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper,* a Federal narcotics agent, with 29 years experience, received in-

formation from an informant that Draper "was peddling narcotics to several addicts" in Denver. Four days later the informant told the Federal agent "that Draper had gone to Chicago the day before [September 6] by train [and] that he was going to bring back three ounces of heroin [and] that he would return to Denver either on the morning of the 8th of September or the morning of the 9th of September also by train." The informant further gave to the Federal agent a detailed physical description of Draper and of the clothing he was wearing and said that he would be carrying a "tan zipper bag" and that he characteristically "walked real fast." The Federal narcotics agent, together with a Denver police officer, went to the train station on the morning of September 8th and watched all incoming trains from Chicago. They failed to observe Draper. However, on September 9th they repeated the process and they observed a person having the physical attributes and wearing the clothing described by the informant alight from an incoming Chicago train and walking "fast." Draper was carrying a tan zipper bag. The officers apprehended Draper. Mr. Justice Whittaker delivered the opinion for the majority of the Supreme Court. He said:

"Nor can we agree with petitioner's second contention that Marsh's [the Federal narcotics law enforcement officer] information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. The information given to narcotic agent Marsh by 'special employee' Hereford [the informant] may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he

saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a 'fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true."

Article 27, § 594B, of the Annotated Code of Maryland, provides in pertinent part:

"(b) A police officer may, when he has probable cause to believe that a felony or misdemeanor is being committed in his presence or within his view, arrest without a warrant any person whom he may reasonably believe to have committed such offense."

"Probable cause" has been defined as a non-technical conception of a reasonable ground for belief of guilt requiring less evidence for such belief than would justify a conviction, but more evidence than mere suspicion. *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925) ; *Cleveland v. State*, 12 Md. App. 712, 280 A. 2d 520 (1971) ; *Cleveland v. State*, 8 Md. App. 204, 253 A. 2d 786 (1969) ; *Cornish and Gilman v. State*, 6 Md. App. 167, 251 A. 2d 23 (1969). In *Brinegar v. United States*, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949), it is stated at page 175:

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities.

These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*Wright v. U. S.* (D. C.), 242 A. 2d 833; *U. S. v. Cumberland* (D. C.), 262 A. 2d 341; *Clarke v. U. S.* (D. C.), 256 A. 2d 782.

At the trial before Judge Ross, appellant's counsel elicited from the officer the fact that the officer did not see a misdemeanor committed in his presence. After some colloquy among the Assistant State's Attorney, defense counsel and the court, Judge Ross inquired of the officer,

"Why did you arrest the man, Officer?"

\* \* \*

"THE WITNESS: Because I believed he was writing numbers on information that I received from the informant. At which time, when I walked up to him, he attempted to throw this object into his mouth. After looking into it, and I saw what it was, there was no doubt he was writing numbers like the informant said.

THE COURT: What did you think he was doing when he threw his hand up to his mouth?

THE WITNESS: Trying to eat the evidence, the slips, trying to swallow, which a lot of times they do."

Appellant vigorously argues that the officer's conclusion that he did not see a misdemeanor committed in his presence renders the resulting arrest illegal. We dis-

agree. The testimony presented by the officer as to the information supplied to him by the informant, and the officer's observations of the appellant's suggestive activity prior to the arrest, gave rise to probable cause to believe, under Article 27, § 594B (b), that the appellant was committing a misdemeanor in the presence of the officer. An important factor in assessing the existence of probable cause in lottery cases is the expertise of the arresting officer. In this case, Officer Mitchell had participated in 20 such investigations. See *State v. Swales*, 12 Md. App. 69, 277 A. 2d 449 (1971) ; *Johnson v. State*, 8 Md. App. 187, 259 A. 2d 97 (1969).

In *Davids v. State*, 208 Md. 377, 118 A. 2d 636 (1955), the Court of Appeals said at page 383 :

> "In such a case, the officer, in determining whether or not a crime was committed in his presence, can act upon all the facts and appearances before him. Where some evidence of the commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, he may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed."

Article 27, § 594B, effective July 1, 1969, codifies the rule in *Davids,* and requires the officer to have "probable cause to believe that a * * * misdemeanor is being committed in his presence or within his view, * * *."

We think that whether Officer Mitchell had probable cause to believe that the appellant was committing a misdemeanor in his presence, or within his view, (Art. 27, § 594B, *supra*) must be viewed in the light of the reliability of the informer as established by the trustworthiness of the information provided by the informer and the officer's personal observations of the activities of

the appellant immediately prior to the arrest. When Officers Mitchell and Webb received the information concerning the appellant from the informant and they then went to the geographical area outlined by the informant and observed appellant, matching the description supplied by the informant, including the carrying of the black umbrella, and activities usually associated with lottery writers, they had, in the words of *Draper*, "personally verified every facet of the information given" by the informant and had "reasonable grounds" to believe that the remaining information supplied by the informant was likewise true.

Even if we were to assume, however, that "probable cause" to affect the arrest did not exist at the time that Officer Mitchell, with badge in hand, approached appellant, we must conclude that the appellant's movement of his hand to his mouth, a commonly employed method for destruction through mastication of papers upon which lottery numbers are written, would have immediately given rise to a rational inference that appellant was endeavoring to destroy evidence. Only the probability and not a *prima facie* showing of criminal activity is the standard to be applied to determine probable cause. *Westcott v. State*, 11 Md. App. 305, 273 A. 2d 824 (1971) ; *Bauckman v. State*, 9 Md. App. 612, 267 A. 2d 309 (1970).

Appellant relies principally upon *Silbert v. State*, 10 Md. App. 56, 267 A. 2d 770 (1970) and *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). Both *Spinelli* and *Silbert* dealt with the question of probable cause for the issuance of a search and seizure warrant, and we think afford him no solace. The information related to Officer Mitchell by the informant, together with the reliability of the informant, would have justified an impartial magistrate's issuance of a warrant.

*Judgment affirmed.*
*Costs to be paid by appellant.*