UNITED STATES of America,
Appellee,

v.

Antonio MARK POLUS, Defendant,
Appellant.

No. 73–1230.

United States Court of Appeals,
First Circuit.

Submitted Feb. 7, 1975.

Decided May 27, 1975.

Antonio Cordova Gonzalez, San Juan, P. R., on brief for defendant, appellant.

Julio Morales Sanchez, U. S. Atty., and Jorge Rios Torres, Asst. U. S. Atty., on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Antonio Mark Polus was convicted on one count of possession with intent to distribute a Schedule I controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(A), and one count of willful possession of counterfeit Federal Reserve Notes with intent to defraud, 18 U.S.C. § 472. The sole issue he raises on appeal is whether the court erred in refusing to suppress heroin and counterfeit bills taken from his possession following his arrest. Before the jury was impanelled, Mark Polus moved to suppress and the court heard and denied the motion, Fed.R.

Crim.P. 41(e). Later the seized items were introduced in evidence.

■ Shortly after he deplaned from a flight originating in New York City, Mark Polus was arrested in the San Juan International Airport on April 15 by agents of the Bureau of Narcotics and Dangerous Drugs. No search or arrest warrant had been obtained. Nonetheless the arrest would be lawful if the agents had probable cause to arrest him, 21 U.S.C. § 878(3)(B); and the subsequent search which revealed the contraband would be valid as incident to his lawful arrest. *See* Draper v. United States, 358 U.S. 307, 310–11 & n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

The agents' decision to arrest Mark Polus was based upon the tip of an informant. Appellant contends that as this source was not shown to be sufficiently "reliable", the tip could not establish probable cause. The relevant evidence most favorable to the Government may be summarized as follows:

■ There was testimony[1] that the agents first met with the informant on April 3 at the San Juan airport. The informant, who had never worked for the federal agents before, had been referred to them by an officer of the Puerto Rico state police. The informant told them that he was waiting at the airport for Mark Polus with whom he intended to fly to New York where Mark Polus would obtain a quantity of narcotics. As a result of this conversation the agents initiated investigations in Puerto Rico and New York concerning the activities of both Mark Polus and the informant. These, it was testified, confirmed that Mark Polus was indeed on his way from his home in Ponce to the airport, and the agents accordingly established a covert surveillance upon the informant. They

---

1. At the suppression hearing only one government agent, Andres Amador Fortier, actually testified. The informant could not be found and apparently had been missing since shortly after the arrest. Prosecution and defense counsel stipulated that the other two agents involved in the investigation and arrest would corroborate Amador Fortier's testimony, and they were not called. At the trial all three agents testified. The only differences from the account elicited at the suppression hearing were the addition of a few further details.

observed Mark Polus arrive and meet with the informant, and watched them board the New York bound flight in company together. The agents subsequently requested that agents from their New York office investigate further. These investigations were said to corroborate the informant's story.[2]

Thereafter, while the informant was in the mainland United States, he kept in "constant contact" with the federal agents in Puerto Rico, phoning them on three occasions. On April 6, his call apparently confirmed the information he had previously given. On April 14, he told the agents that he and Mark Polus would be returning to Puerto Rico shortly. On the morning of April 15, the informant told the agents that appellant and he would be arriving at International Airport that afternoon, gave them the flight number and time, and told them that appellant would be carrying narcotics and counterfeit bills.

 The agents went to the airport and established surveillance of the gate area where the flight was expected. At about 2:00 p. m. the informant came through the gate area with other passengers from the New York flight, met with the agents, told them that Mark Polus would be deplaning in a few minutes and said that narcotics were secreted in his tie. When appellant came through the gate area the agents followed him to the main lobby. There they approached him, touched his tie, and placed him under arrest. Upon searching him they found a plastic bag containing approximately one ounce of heroin in his tie, and twelve counterfeit $20 bills in a box he had been carrying.

The Supreme Court has cautioned,

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, 338 U.S. [160] at page 175 [69 S.Ct. 1302 at page 1310, 93 L.Ed. 1879]. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]."

*Draper,* 358 U.S. at 313, 79 S.Ct. at 333. We think that the informant's story concerning Mark Polus' possession of contraband bore sufficient indicia of truthfulness to justify men of reasonable caution in acting thereon.[3]

By the time of arrest, the agents were sufficiently aware of the underlying circumstances from which the informant concluded that appellant would be bringing contraband back from New York. *See* Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). His story, verified by the agents' observations, indicated that his information was

---

2. Details of the New York investigation were not brought out at the suppression hearing, possibly because counsel anticipated they would be rejected as hearsay. In response to a defense objection, the court had earlier ruled statements made by the informant to the agents concerning appellant's activities inadmissible on that ground. That ruling was incorrect. The statements were not offered for their truth and should have been accepted to demonstrate fully the information from which the agents concluded the informant was reliable. *See* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

3. The agents are held to at least as stringent a standard as that utilized in reviewing a magis-

trate's decision to issue search and arrest warrants. Whitely v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). We need not consider whether arrests such as that of appellant, made without a warrant, should be held to an even more rigorous standard, *see, e. g., id.;* United States v. Ventresca, 380 U.S. 102, 105–07, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We think any reasonable standard was met. It is true that a search warrant might have been sought earlier. But there were time exigencies and the actual appearance of both the informant and appellant at the gate, coupled with the informant's specific details as to the location of the drug, added considerably to such cause as may already have existed.

based upon personal knowledge of appellant's movements and intentions. United States v. Ventresca, 380 U.S. 102, 109–11, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). And, despite the fact that the informant had never worked for the agents previously, there was enough corroborating information to establish his "reliability". Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). His tip was not that of an anonymous third party. The agents had met with him, had learned his name and address, had been in regular touch with him, and were able to corroborate various aspects of his story. The tip was not founded upon rumor or speculation. *See* Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 1199 (1969).

█ The surveillance, instituted and maintained after the initial meeting at the airport, established that appellant had come to meet the informant and that together they boarded a plane for New York. He was accompanying appellant on the venture and, indeed, might have been considered an accomplice in some of his endeavors. In these circumstances his statements take on added credibility. *See* United States v. Harris, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (Burger, C. J.). Moreover, the informant diligently kept in touch with the agents after their first contact and continued to pass on information regarding appellant's activities and intentions. Immediately prior to the arrest he gave the agents information of such specific detail concerning the location of the narcotics that it strongly supported the inference that he knew what he was talking about. *Draper; see Spinelli*, 393 U.S. at 416–17, 89 S.Ct. 584. And, perhaps most importantly, he was present at the arrest. Indeed, he was himself taken into custody. It seems extremely unlikely that an informant would expose himself to such risk unless he were very sure of his facts. *See* Adams v. Williams, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

We think that taking all these items into account the agents were justified in believing they had reasonably trustworthy information that a felony was being committed. The fourth amendment does not require more.

Affirmed.