# LAWRENCE MAURICE MERRICK *v.* STATE OF MARYLAND

[No. 111, September Term, 1977.]

*Decided June 19, 1978.*

*Motion for reconsideration filed June 20, 1978; denied August 17, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Irwin M. Brown, Assigned Public Defender,* with whom were *Alan H. Murrell, Public Defender, Dennis M. Henderson* and *George E. Burns, Jr., Assistant Public Defenders,* and *Arnold M. Zerwitz, Assigned Public Defender,* on the brief, for appellant.

*F. Ford Loker, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp* and *Gilbert H. Robinette, Assistant Attorneys General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., joins at page 20 *infra.*

On 20 October 1975, Lawrence Maurice Merrick, Joyce Marcine Williamson and Nelson Leroy Boone were jointly indicted by the grand jury for Baltimore County. The indictment presented that on 5 October 1975 they "wilfully and of deliberately premeditatedly malice aforethought" murdered (1st count) and conspired to murder (2nd count) Randolph Alexander Williamson, Jr. (Joyce Marcine Williamson's husband). The 3rd count of the indictment charged the common law offense of solicitation to commit a felony, alleging that Mrs. Williamson and Boone solicited Merrick to murder Mr. Williamson. The accused were separately tried in the Circuit Court for Baltimore County. On 15 March 1976, Merrick, whose case is before us on this appeal, was found guilty by a jury as to the 1st and 2nd counts. He was sentenced to imprisonment for life on each conviction, the sentences to run concurrently. He noted an appeal to the Court of Special Appeals, failed to transmit the record in the time required, and was granted a belated appeal

under post conviction procedures. The Court of Special Appeals affirmed the judgments. *Merrick v. State,* No. 1095, September Term, 1976, decided 28 July 1977, unreported. We granted a writ of certiorari.[1]

## I

Merrick was arrested on 6 October 1975 on the authority of a warrant issued the day before by a judicial commissioner of the District Court of Maryland upon the sworn application of Officer James V. McConville of the Baltimore County Police Department. The warrant alleged that Merrick unlawfully conspired with Mrs. Williamson on 5 October 1975 "to kill and slay" Mr. Williamson. We quote in full, with only minor editing, the "[c]oncise statement of facts showing that there is probable cause to believe that a crime has been committed and that [Merrick] has committed it," set out by McConville in his application for the arrest warrant:

"[Merrick] did conspire [with] Joyce Marcine Williamson to murder and possibly did complete the said conspiracy by murdering Randolph Alexander Williamson, Jr. Nelson Leroy Boone has given information that he received from Joyce Marcine Williamson certain monies in Baltimore County, Md. and paid same to Lawrence Maurice Merrick for the purpose of having him murder Randolph Alexander Williamson, Jr. Further that within the last month Lawrence Maurice Merrick has called coconspirator Joyce Marcine Williamson at her home in Baltimore

---

1. Boone was found guilty as to the 3rd count at a court trial on 18 June 1976 and sentenced on 17 September to 8 years. A nolle prosequi was entered as to the 1st and 2nd counts. His request for a modification of sentence was subsequently denied. The record before us does not show an appeal by him.

On 6 July 1976 Mrs. Williamson was found by a jury to be criminally responsible and was convicted under all three counts. She was sentenced to life imprisonment under the 1st count and to a concurrent 5 year sentence under the 2nd count. The 3rd count was merged into the 2nd count. On appeal, the Court of Special Appeals reversed the murder conviction. Williamson v. State, 36 Md. App. 405, 374 A. 2d 909 (1977). On review under a writ of certiorari granted upon petition by the State, we reversed the judgment of the Court of Special Appeals and remanded the case for further proceedings. State v. Williamson, 282 Md. 100, 382 A. 2d 588 (1978).

4

County. Further that on October 4, 1975 Lawrence Maurice Merrick was aware and told Nelson Leroy Boone that he (Lawrence Maurice Merrick) knew where Randolph Alexander Williamson, Jr. would be in the early morning hours of October 5, 1975. Nelson Leroy Boone gave information that approx. one (1) hour before the body of Randolph Alexander Williamson, Jr. was found dead, Lawrence Maurice Merrick called Williamson's home in Baltimore County. Nelson Leroy Boone also was told by Joyce Marcine Williamson that she had spoken to Lawrence Maurice Merrick about this murder during the month of September, 1975."

## II

"The right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons ... to be seized." U. S. Const. amend. IV, applicable to the States through the fourteenth amendment, *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684 (1961).[2] An affidavit for a warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant. *Jones v. United States,* 362 U. S. 257, 268-271, 80 S. Ct. 725 (1960). However, in such circumstances, as is the case here, a warrant may be properly issued only if the issuing official, in discharging his duty as "a neutral and detached" person to make an independent assessment of probable cause, *Giordenello v. United States,* 357 U. S. 480, 486, 78 S. Ct. 1245 (1958), concludes that (a) the knowledge attributed to the

---

2. Md. Const., Declaration of Rights, Art. 26 provides "[t]hat all warrants, without oath or affirmation, ... to seize any person ..., are grevious and oppressive; and all general warrants ... to apprehend suspected persons, without naming or describing ... the person in special, are illegal, and ought not to be granted." This Article is in *pari materia* with the fourth amendment to the Constitution of the United States. Givner v. State, 210 Md. 484, 492, 124 A. 2d 764 (1956). *See* Maryland District Rule 720 e and former Maryland District Rule 706 c 1.

informant, if true, would be sufficient to establish probable cause; (b) the affiant is likely relating truthfully what the informant said; and (c) it is reasonably likely that the informant's description of criminal behavior accurately reflects reality. *United States v. Harris,* 403 U. S. 573, 587, 91 S. Ct. 2075 (1971) (Harlan, J. dissenting). In the case before us, it is not suggested that the commissioner's judgment as to elements (a) and (b) was not properly supported. We are concerned only with the final component, (c), of the probable cause equation. This element, that it appears reasonably likely that the informant's claim that criminal conduct has occurred or is occurring is probably accurate, is satisfied only if there is reason to believe both that the informant is a truthful person generally and that he has based his particular conclusions in the matter at hand on reliable data. *Spinelli v. United States,* 393 U. S. 410, 413-417, 89 S. Ct. 584 (1969); *Aguilar v. State of Texas,* 378 U. S. 108, 114-115, 84 S. Ct. 1509 (1964). Thus, the affidavit must set forth facts which enable the issuing official to judge for himself both (1) the probable credibility of the informant (the "veracity" prong of *Aguilar*) and (2) the reliability of his information (the "basis of knowledge" prong of *Aguilar.) Aguilar* at 114. Merrick does not claim that the affidavit did not satisfy the "basis of knowledge" prong. His only concern is with the "veracity" prong. The agreed statement of facts included in Merrick's brief, pursuant to Maryland Rule 828 g, asserts:

"[Merrick] contended at trial and in the Court of Special Appeals that his arrest was illegal because the arrest warrant was defective, and that statements he made following his arrest must be suppressed under the principles announced in *Brown v. Illinois,* 422 U. S. 590, [95 S. Ct. 2254] (1975). The warrant was challenged on the basis that facts alleged as probable cause in the application for the warrant had been received from a named informant whose veracity had not been established."

6

The affiant here provided no information in addition to that obtained from the informant.[3] The statements of the informant, Boone, were against his penal interest, for he thereby admitted major elements of criminal offenses. Thus, the question for decision is a narrow one: is the probable credibility of an identified informant sufficiently shown on the sole basis that his statements establishing probable cause are declarations against penal interest? [4]

The Court of Special Appeals held that the declaration against penal interest contained in the application for the arrest warrant here satisfied the "veracity" prong of *Aguilar*. It reached this determination on the basis of *United States v. Harris, supra,* in which Mr. Chief Justice Burger in an opinion announcing the judgment of the Court upholding the validity of a search and seizure warrant, declared, after observing that statements in the application for the warrant were against an unnamed informant's penal interest:

> "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause. . . ." *Id.* at 583.

This conclusion, contained in Part III of the opinion, was not shared by a majority of the Court. The Chief Justice was joined only by Mr. Justice Black, Mr. Justice White and Mr.

---

**3.** Of course, where the affiant does provide information in addition to that of the informant's tip, the issuing official could alternatively find probable cause, without reference to informant's information, if he can conclude that the affiant is probably telling the truth and the affidavit, apart from the informant's information is sufficient to establish probable cause. *See* Spinelli v. United States, 393 U. S. 410, 414, 89 S. Ct. 584 (1969).

**4.** Both Merrick and the State agree that this is the narrow issue to be decided. Merrick says:

> "The narrow issue in this appeal is whether the statements of one who admits involvement in a criminal enterprise meets the 'veracity' prong because the statements appear to amount to a declaration against penal interest."

The State agrees "[t]hat the narrow issue to be decided by this Court is whether, under the facts of this case, the declaration against penal interest by the named accomplice, which implicated [Merrick] in the murder plot, was sufficient to convince the court commissioner who issued the arrest warrant of the veracity of the information."

Justice Blackmun on the point. Mr. Justice Harlan, with whom Mr. Justice Douglas, Mr. Justice Brennan and Mr. Justice Marshall joined, expressly disagreed in a dissenting opinion. Thus, although there was a majority of five joining in the judgment, there was only a plurality of four in agreement with the opinion delivering the judgment.[5] The lack of an agreement by a majority of the Court on the principles of law involved prevents the opinion from being an authoritative determination for other cases. *United States v. Pink,* 315 U. S. 203, 216, 62 S. Ct. 552 (1942). *See* Annot., 65 A.L.R. 3d 504 (1975). Its findings, conclusions and views are not constitutionally the "Supreme Law" of Maryland, nor are the "Judges of this State, and all the People of this State . . . bound thereby." [6] In other words, the conclusion regarding statements against penal interest expressed by the four justices in the Burger opinion is not controlling in this State; it is no more binding than is the contrary conclusion reached by the four justices in the Harlan dissenting opinion. Therefore, we may look at the Burger opinion and the Harlan opinion on the question of statements in applications for

5. Mr. Justice Stewart, Mr. Justice Black and Mr. Justice Blackmun joined in Part I of the opinion of the Chief Justice. Part I discussed the aggregation of facts which made the affidavit sufficient, concluding that the affidavit contained "an ample factual basis for believing the informant which, when coupled with affiant's own knowledge of [Harris's] background, afforded a basis upon which a magistrate could reasonably issue a warrant." United States v. Harris, 403 U. S. 573, 579-580, 91 S. Ct. 2075 (1971). Part II dealt with the quantum of information necessary to support a belief that an unidentified informant's information is truthful, discussing the value of using an affiant's personal knowledge of the suspect's background to corroborate the informant's tip. *Id.* at 580-583. *See* Abercrombie v. State, 528 S.W.2d 578, 584 (Tex. Cr. App. 1974) (opinion on State's motion for rehearing).

6. "The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding." Md. Const., Declaration of Rights, Art. II.

This constitutional mandate includes decisions of the Supreme Court of the United States construing the federal constitution. Wilson v. Turpin, 5 Gill 56 (1847); Howell v. The State, 3 Gill 14 (1845). *See* Baker, Whitfield & Wilson v. State, 15 Md. App. 73, 77-78, 82-83, 289 A. 2d 348, *cert. denied,* 266 Md. 733, 744 (1972), 410 U. S. 969 (1973). *See also* Whitfield v. Warden of Maryland House of Correction, 486 F. 2d 1118 (4th Cir. 1973), *cert. denied,* 419 U. S. 876 (1974).

warrants which are against the penal interest of the declarant only in the frame of reference of the persuasiveness of the respective reasons advanced.

It was found in Part III of the Burger opinion that the declaration against penal interest was an additional reason for crediting the informant's tip, "[q]uite apart from the affiant's own knowledge of [Harris's] activities." *Harris* at 583:

> "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search." [7] *Id.* at 583.

Various arguments to the contrary were anticipated in the opinion. "[T]he residual risk and opprobrium of having admitted criminal conduct" is not eliminated because "the informant may be paid or promised a 'break'." It is immaterial that the informant's out-of-court declarations may not be admissible at the accused's trial under *Donnelly v. United States,* 228 U. S. 243, 33 S. Ct. 449 (1913), or under *Bruton v. United States,* 391 U. S. 123, 88 S. Ct. 1620 (1968). The opinion expressed the belief that "[w]hether or not *Donnelly* is to survive as a rule of evidence in federal trials, it should not be extended to warrant proceedings to prevent magistrates from crediting, in all circumstances, statements of a declarant containing admissions of criminal conduct." [8]

---

7. The Burger opinion conceded that "admissions of crime do not always lend credibility to contemporaneous or later accusations of another." United States v. Harris, 403 U. S. 573, 584, 91 S. Ct. 2075 (1971). But, it thought that, in the circumstances, where "the informant's admission that over a long period and currently he had been buying liquor on certain premises, itself and without more, implicated that property and furnished probable cause to do search." *Id.* at 584.

8. The Burger opinion observed that the implication in Donnelly v. United States, 228 U. S. 243, 33 S. Ct. 449 (1913) "that statements against penal interest are without value and *per se* inadmissible has been widely criticized;

*Id.* at 583-584. "[T]he issue in warrant proceedings is not guilt beyond a reasonable doubt but probable cause for believing the occurrence of a crime. . . ." *Id.* at 584. *Bruton* was patently distinguishable as "that case rested on the Confrontation Clause of the Sixth Amendment which seems inapposite to *ex parte* search warrant proceedings under the Fourth Amendment." Further, it would "not do to say that warrants may not issue on uncorroborated hearsay. This only avoids the issue of whether there is reason for crediting the out-of-court statement." *Id.* at 584. "Nor," the Burger opinion stated, "is it especially significant that neither the name nor the person of the informant was produced before the magistrate. The police themselves almost certainly knew his name, the truth of the affidavit is not in issue, and *McCray v. Illinois,* 386 U. S. 300, 87 S. Ct. 1056, 18 L.Ed.2d 62 (1967), disposed of the claim that the informant must be produced whenever the defendant so demands." *Harris* at 584-585.

Mr. Justice Harlan thought that the rationale that the magistrate might properly have credited the informant's assertions on the ground that they confessed to the commission of a crime should not have been advanced because of the government's failure even to suggest it. So he would not decide the question in the case before the Court.[9] Had the argument been pressed upon the Court, however, he would have found it difficult to accept. He was inclined to the view "that magistrates may not properly predicate a

see the dissenting opinion of Mr. Justice Holmes in *Donnelly, supra,* [228 U. S.] at 277; 5 J. Wigmore, Evidence § 1477 (3d ed. 1940), and has been partially rejected in Rule 804 of the Proposed Rules of Evidence for the District Courts and Magistrates." *Harris* at 584. The rule has since been adopted. Fed. R. Evid. 804 (b) (3).

9. Mr. Justice Harlan said:

"[A]t this juncture, it seems to me quite clear that no such rule should be injected into our federal jurisprudence in the absence of any representation by the Government that the factual assumptions underlying it do, indeed, comport with reality, and in the face of the Government's apparent explicit assertion, in this very case, that those able to supply information sufficient to establish probable cause under such a new rule would tend to be less reliable than those who cannot. The necessity for this haste to embrace such a speculative theory, without any argument from those who will be affected by it, wholly escapes me." United States v. Harris, 403 U. S. 573, 595-596, 91 S. Ct. 2075 (1971) (Harlan, J. dissenting).

determination that an unnamed confidant is credible upon the bare fact that by giving information he also confessed to having committed a crime." *Harris* at 595 (Harlan, J. dissenting). He justified that inclination with three reasons.

The first reason touched on the rules of evidence. Mr. Justice Harlan recognized that "strict rules of evidence certainly do not govern magistrates' assessments of probable cause," but, he thought, "it would require a rather extensive relaxation of them to permit reliance on this factor." *Id.* at 594. "And these rules," he observed, "cannot be completely relaxed, of course, since the basic thrust of *Spinelli, [supra]*, *Aguilar, [supra]*, *Nathanson [v. United States*, 290 U. S. 41, 54 S. Ct. 11 (1933)], *Whiteley [v. Warden*, 401 U. S. 560, 91 S. Ct. 1031 (1971)], and *Giordenello, supra,* is to prohibit the issuance of warrants upon mere uncorroborated hearsay." *Id.* at 594. Mr. Justice Harlan found that the analogy to the hearsay exception was quite tenuous, and cited *Donnelly, supra,* as holding that declarations against penal interest do not fall within this exception. "Moreover, because it has been thought that such statements should be relied upon by factfinders only when necessity justifies it, the rule universally requires a showing that the declarant cannot be produced personally before the trier of fact, C. McCormick, Evidence §§ 253, 257 (1954), an element not shown to be present here." *Id.* at 594. Also, the Court had not found any instance of the application of the rule when the witness declined to reveal to the trier of fact the identity of the declarant, "presumably because without this knowledge it cannot be readily assumed that the declarant might have had reason to suspect the use of the statement would do him harm." *Id.* at 594.

The second reason was Mr. Justice Harlan's disagreement with the rationale for this exception to the hearsay rule, that the fact that the declaration was against the speaker's self-interest tends to indicate that its substance is accurate. He cited 5 J. Wigmore, Evidence § 1457 (3d ed. 1940).

"But where the declarant is also a police informant it seems at least as plausible to assume, without

further enlightenment either as to the Government's general practice or as to the particular facts of this case, that the declarant-confidant at least believed he would receive absolution from prosecution for his confessed crime in return for his statement." *Id.* at 595.

The third reason went to the effect of adopting such rule:

"Thirdly, the effect of adopting such a rule would be to encourage the Government to prefer as informants participants in criminal enterprises rather than ordinary citizens, a goal the Government specifically eschews in its brief in this case upon the explicit premise that such persons are often less reliable than those who obey the law." *Id.* at 595.

For discussions of the *Harris* opinions, *see* W. Ringel, Searches and Seizures, Arrests and Confessions §§ 335.01 and 337.01 (1972 and Cum. Supp. 1977); Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L. J. 703 (1972); *The Supreme Court, 1970 Term,* 85 Harv. L. Rev. 3, 53-64 (1971); Comment, *An Informant's Tip as the Basis for Probable Cause: Modified Aguilar Standards,* 20 S.D.L.Rev. 363 (1975); 43 Col.L.Rev. 357 (1971).[10]

Merrick and the State both assert that the decision of this Court should turn on *Harris.* Merrick would have us follow the inclination of Mr. Justice Harlan "that magistrates may not properly predicate a determination that an unnamed confidant is credible upon the bare fact that by giving information he also confessed to having committed a crime," *Harris* at 595, and expand it to include a named informant. The State urges us to adopt, as the Court of Special Appeals did, the rationale of the Burger opinion that admissions of crime by informants, named or unnamed, carry their own indicia of credibility, sufficient at least to support a finding of probable cause to arrest or search and seize, *Harris* at 583.

---

10. The point of declarations against penal interest was not considered by or involved in either Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584 (1969) or Aguilar v. State of Texas, 378 U. S. 108, 84 S. Ct. 1509 (1964).

12

The issue whether declarations against penal interest are sufficient to satisfy the informant credibility aspect of *Aguilar-Spinelli* has not been squarely addressed heretofore by this Court. But we have not rejected the general concept that such declarations may provide support for probable cause to arrest. In *Mefford and Blackburn v. State,* 235 Md. 497, 511, 201 A. 2d 824 (1964), *cert. denied,* 380 U. S. 937 (1965) we held that Blackburn's arrest was legal. We said that after Mefford had confessed to a police officer to having committed murder and had given his confession support by turning over the murder weapon, the officer from these facts and his prior knowledge of the case had probable cause to believe that Blackburn was Mefford's confederate, as Mefford claimed, and had the right to arrest Blackburn.

The Court of Special Appeals in *Cuffia v. State,* 14 Md. App. 521, 287 A. 2d 319, *cert. denied,* 265 Md. 736 (1972), in discussing probable cause to arrest, observed that the informant made a statement against his penal interest, and simply referred to Harris "for the effect of an informant's statement against penal interest." *Id.* at 523. *See Stanley v. State,* 19 Md. App. 507, 521, n. 8, 313 A. 2d 847, *cert. denied,* 271 Md. 745 (1974).

III

Cases in other jurisdictions are divided concerning the sufficiency of declarations against penal interest to establish credibility of an informant as to probable cause for the issuance of a warrant. We list them according to their holdings, and, as to each, designate whether the informant was identified in the affidavit.

The following cases hold specifically that a declaration against penal interest is sufficient of itself to establish an informant's credibility: *Armour v. Salisbury,* 492 F. 2d 1032 (6th Cir. 1974) (unidentified); *Maxwell v. State,* 259 Ark. 86, 531 S.W.2d 468 (1976) (identified); *State v. Patterson,* 309 So. 2d 555 (Fla. App. 1975) (identified); *State v. Archuleta,* 85 N. M. 146, 509 P. 2d 1341, *cert. denied,* 414 U. S. 876 (1973) (unidentified).

The following cases, without specifically so holding, appear not to have considered factors other than a declaration against penal interest in determining whether the informant was credible: *United States v. Barfield,* 507 F. 2d 53 (5th Cir.), *cert. denied,* 421 U. S. 950 (1975) (identified); *United States v. Golay,* 502 F. 2d 182 (8th Cir. 1974) (identified); *United States v. Principe,* 499 F. 2d 1135 (1st Cir. 1974) (identified); *United States v. Damitz,* 495 F. 2d 50 (9th Cir. 1974) (identified); *Agnellino v. State of New Jersey,* 493 F. 2d 714 (3rd Cir. 1974) (unidentified); *United States v. Carmichael,* 489 F. 2d 983 (7th Cir. 1973) (unidentified); *United States v. Long,* 449 F. 2d 288 (8th Cir. 1971), *cert. denied,* 405 U. S. 974 (1972) (unidentified); *Dudley v. State,* 342 So. 2d 437 (Ala. Cr. App. 1977) (identified); *Ming v. Superior Court for County of Santa Barbara,* 13 Cal. App. 3d 206, 91 Cal. Rptr. 477 (1970) (identified); *People v. Trontell,* 188 Col. 253, 533 P. 2d 1124 (1975) (identified); *People v. Bolender,* 24 Ill. App. 3d 804, 322 N.E.2d 624 (1974), *cert. denied,* 423 U. S. 936 (1975) (unidentified); *People v. Barcia,* 37 A.D.2d 612, 323 N.Y.S.2d 517 (1971) (identified); *Gentry v. State,* 562 P. 2d 1170 (Okl. Cr. App. 1977) (identified); *Manley v. Commonwealth,* 211 Va. 146, 176 S.E.2d 309 (1970), *cert. denied,* 403 U. S. 936 (1971) (unidentified); *State ex rel. Bena v. Crosetto,* 73 Wis. 2d 261, 243 N.W.2d 442 (1976) (unidentified). In *State v. Harding,* 184 Neb. 159, 165 N.W.2d 723 (1969) it was not clear whether the informant was identified.

The following cases hold specifically that a declaration against penal interest is not of itself conclusive in determining whether an informant was credible, but is a factor to be considered: *People v. Werber,* 19 Cal. App. 3d 598, 97 Cal. Rptr. 150 (1971) (identified); *Wilson v. State,* 314 A. 2d 905 (Del. 1973) (identified); *Commonwealth v. Fleurant,* 311 N.E.2d 86 (Mass. 1974) (identified).

The following cases, without specifically so holding, appear to have considered factors in addition to or other than a declaration against penal interest in determining whether the informant was credible: *United States v. Jackson,* 560 F. 2d 112 (2d Cir.), *cert. denied,* 434 U. S. 941 (1977) (identified); *United States v. Poulack,* 556 F. 2d 83 (1st Cir. 1977), *cert.*

*denied,* 434 U. S. 986 (1977) (unidentified); *United States v. DiStefano,* 555 F. 2d 1094 (2nd Cir. 1977) (identified); *United States v. Rueda,* 549 F. 2d 865 (2d Cir. 1977) (identified); *United States v. Rosenbarger,* 536 F. 2d 715 (6th Cir. 1976), *cert. denied,* 431 U. S. 965 (1977) (identified); *United States v. Spach,* 518 F. 2d 866 (7th Cir. 1975) (unidentified); *United States v. Mark Polus,* 516 F. 2d 1290 (1st Cir.), *cert. denied,* 423 U. S. 895 (1975) (identified); *United States v. Miley,* 513 F. 2d 1191 (2d Cir.), *cert. denied,* 423 U. S. 842 (1975) (identified); *United States ex rel. DiRienzo v. Yeager,* 443 F. 2d 228 (3rd Cir. 1971) (identified); *United States v. Coleman,* 423 F. Supp. 630 (N.D. Cal. 1976) (unidentified); *United States v. Jones,* 359 F. Supp. 1268 (D. Md. 1973), *aff'd,* 500 F. 2d 1085 (4th Cir.) (per curiam), *cert. denied,* 419 U. S. 1053 (1974) (unidentified); *United States v. Carter,* 337 F. Supp. 604 (D. Minn. 1971), *aff'd,* 462 F. 2d 456 (8th Cir. 1972) (unidentified); *State v. Porter,* 26 Ariz. App. 585, 550 P. 2d 253 (1976) (identified); *Baxter v. State,* 556 S.W.2d 428 (Ark. 1977) (identified); *People v. Hall,* 42 Cal. App. 3d 817, 117 Cal. Rptr. 228 (1974) (identified); *People v. McFadden,* 4 Cal. App. 3d 672, 84 Cal. Rptr. 675 (1970) (identified); *State v. Mabrey,* 140 Ga. App. 577, 231 S.E.2d 461 (1976) (unidentified); *Smith v. State,* 136 Ga. App. 17, 220 S.E.2d 11 (1975), *cert. denied,* 425 U. S. 938 (1976) (unidentified); *State v. Gamage,* 340 A. 2d 1 (Me. 1975) (unidentified); *Commonwealth v. Stewart,* 358 Mass. 747, 267 N.E.2d 213 (1971) (unidentified); *Commonwealth v. Vynorius,* 336 N.E.2d 898 (Mass. 1975) (unidentified); *People v. Wolzer,* 41 A.D.2d 679, 340 N.Y.S.2d 953 (1973), *aff'd,* 373 N.Y.S.2d 325 (1975) (identified); *Pierce v. State,* 491 P. 2d 335 (Okl. Cr. App. 1971) (unidentified); *State v. Hayward,* 18 Ore. App. 128, 523 P. 2d 1278 (1974) (unidentified); *Commonwealth v. Soychak,* 221 Pa. Super. 458, 289 A. 2d 119 (1972) (unidentified). In *State v. Johnson,* 17 Wash. App. 153, 561 P. 2d 701 (1977), it is not clear whether the informant was identified.

In the great majority of the cases we have above cited, whether or not the informant was identified in the affidavit was not expressly discussed with respect to the issue of his credibility. And, as we have seen, the Burger opinion in *Harris*

did not find it "especially significant that neither the name nor the person of the informant was produced before the magistrate," because "[t]he police themselves almost certainly knew his name," and it is not necessary that "the informant must be produced whenever the defendant so demands." *Id.* 403 U. S. at 584-585. On the other hand, there is some slight authority for the view that unless the informant is identified, there is no true declaration against penal interest. *See State v. Mabrey, supra; Commonwealth v. Falk,* 221 Pa. Super. 43, 290 A. 2d 125 (1972). And on the authority of *Donnelly v. United States, supra,* it was stated in the Harlan dissent in *Harris* that the federal rule is that declarations against penal interest do not fall within the hearsay exception. There followed the observation that "we have not found any instance of the application of this rule where the witness declined to reveal to the trier of fact the identity of the declarant, presumably because without this knowledge it cannot be readily assumed that the declarant might have reason to suspect the use of his statement would do him harm." 403 U. S. at 594. *See,* however, Fed.R.Evid. 804 (b) (3). *But see* the cases cited *supra,* in which a declaration against penal interest by an *unidentified informant* was considered with respect to the credibility of the informant in that component of the probable cause equation which requires that it is reasonably likely that the informant's description of criminal behavior reasonably reflects reality. There are also cases which distinguish between the probative value of the statement against penal interest of an informant who is identified and an informant who is unidentified, giving more weight to the declaration of the identified informant. *See United States v. Spach, supra; United States v. Principe, supra; People v. Werber, supra; People v. Trontell, supra; Wilson v. State, supra; Commonwealth v. Fleurant, supra; Gentry v. State, supra.*

## IV

Upon analysis of *Harris* and the cases in other jurisdictions, we find the prevailing view to be that declarations by an informant against his penal interest may be considered in the

determination of the informant's credibility. We adopt that view. *See Abercrombie v. State,* 528 S.W.2d 578, 584 (Tex. Cr. App.1974) (opinion in State's motion for rehearing). Given this, we conclude that the probable credibility of the informant here was sufficiently shown on the sole basis of his statements against his penal interest. We reach this conclusion in light of his identification in the affidavit and the nature of his declaration.[11]

We think that the identification in the affidavit of the informant here is significant in assessing his credibility. We have said that the strictures of *Aguilar-Spinelli* are aimed primarily at unnamed police informers. *Mobley and King v. State,* 270 Md. 76, 85, 310 A. 2d 803, (1973), *cert. denied,* 416 U. S. 975 (1974).

> " 'The practical distinction is that in dealing with a named source, the very naming of the source and the relationship of the source to the observed information may go a long way (or even be sufficient unto itself), under the facts of a particular case, to establish the credibility of that source or the reliability of his information.' " *Andresen v. State,* 24 Md. App. 128, 176, 331 A. 2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd,* 427 U. S. 463, 96 S. Ct. 2737 (1976) (quoting *Dawson v. State,* 11 Md. App. 694, 699, 276 A. 2d 680, *cert. denied,* 263 Md. 711, 712 (1971)).

In the majority of those cases in other jurisdictions in which a declaration against penal interest was found to be sufficient of itself or with other factors to show the credibility of the informant, the informant was identified, indicative of the probative value usually given to his identification. Of course, the informant here was not one of that broad class of secondary sources of police information such as victims of crime, disinterested witnesses of crime or other disinterested civilians who are generally, but not universally, named. But

---

11. In the facts and circumstances of the case *sub judice,* we do not reach the question of the credibility of an *unidentified* informant on the sole basis of his declarations against penal interest.

there is no indication that he was a paid police informer.[12] Further, his indictment, prosecution, conviction and sentence, see note 1 *supra,* show that immunity was not involved and indicate that he had not been promised "a break" for the information he supplied.

We believe that the informant's credence was buttressed by the seriousness of the crimes he admitted and the extent of his participation. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *Harris,* 403 U. S. at 583.

Our conclusion is in line with the Burger opinion in *Harris.* The assertion that "[c]ommon sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements [by an informant against his penal interest]," and the observation that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions," are followed by the flat statement: "Admissions of crime . . . carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search." *Harris,* 403 U. S. at 583. This is so, the Burger opinion explains, even though the informant may be paid or promised a "break" because "the residual risk and opprobrium of having admitted criminal conduct" is not eliminated thereby. *Id.* at 583-584.[13]

---

12. For a classification of informers *see* Nutter v. State, 8 Md. App. 635, 637, n. 1, 262 A. 2d 80 (1970). Under that classification, the informant here appeared to be a first time informer and would probably fall into the category of a casual informer — those persons who live on the fringes of crime and often have associations and information that are useful to the police. Police involvement begins at the end of the process, not at the beginning, as distinguished from "stool pigeons," police spies, police undercover agents, and agents provocateur.

13. The belief that our conclusion is in line with the Burger opinion is not eroded by the concession in the Burger opinion that "admissions of crime do not always lend credibility to contemporaneous or later accusations of another." United States v. Harris, 403 U. S. 573, 584, 91 S. Ct. 2075 (1971). Although the statement against penal interest was given as "an additional reason for crediting the informant's tip," it was considered "[q]uite apart from the affiant's own knowledge of [Harris's] activities." *Id.* at 583. Further, the nature of the admission "itself and without more," was found to furnish probable cause. *Id.* at 584. We see no ambiguity in the Burger opinion as was suggested in Abercrombie v. State, 528 S.W.2d 578 (Tex. Cr. App. 1974) (opinion in State's motion for rehearing), *i.e.,* "whether a declaration against penal interest by the informer is alone sufficient to support a finding that the informer is credible." (*Id.* at 584).

We do not believe that our conclusion is, in substance, at odds with the Harlan dissent in *Harris*.[14] That opinion was written in terms of "an unnamed informant," Mr. Justice Harlan asserting:

> "In short, I am inclined to the view, although I would not decide the question here, that magistrates may not properly predicate a determination than *an unnamed confidant* is credible upon the bare fact that by giving information he also confessed to having committed a crime." *Harris,* 403 U. S. at 595 (Harlan, J. dissenting) (emphasis added).

Finally, in evaluating the showing of probable cause necessary to support a warrant, we heed, as the Burger opinion declared would be well to do, "the sound admonition" of *United States v. Ventresca,* 380 U. S. 102, 85 S. Ct. 741 (1965):

> " '[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one

---

**14.** It has been suggested that the difference between the two positions of the Burger opinion and the Harlan opinion may be more apparent than real.

"The Harlan dissent did not so much quarrel with the general proposition that a genuine declaration against penal interest would be some guarantee of trustworthiness, but only with the application of that principle to the typical paid and protected police 'stool pigeon,' whom the courts have always treated with a healthy skepticism as inherently suspect. The Burger position, on the other hand, does not necessarily espouse the application of the general principle in the indiscriminate fashion condemned by Harlan, since the only informant under examination in *Harris* would not seem to have been, as a customer for bootleg whiskey, a typical police 'stool pigeon.' The quarrel may well, therefore, not be over the general principle itself but simply over the factual question of which tips furnished by which informants under which circumstances are, in truth, genuine declarations against penal interest. See McCormick *The Law of Evidence,* § 256 (1954). The literal holding of even the plurality opinion, therefore, is not nearly as frightening or as inconsonant with earlier decisions as is the unnecessarily broad language of Chief Justice Burger." Stanley v. State, 19 Md. App. 507, 521, n. 8, 313 A. 2d 847, *cert. denied,* 271 Md. 745 (1974).

involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' " *Harris,* 403 U. S. at 577 (quoting *Ventresca,* 380 U. S. at 108).

"*Aguilar* in no way departed from these sound principles." *Id.* at 577.

## V

The narrow question for decision, see *supra,* was within the frame of reference of the question presented in the petition for certiorari, iterated in Merrick's brief and agreed upon "in substance" by the State:

"Did the Court of Special Appeals err in upholding the trial Court's ruling that [Merrick's] arrest was not illegal and that a statement given by [Merrick] a short time after his arrest need not be suppressed as the fruit of an illegal arrest?"

We hold that the Court of Special Appeals did not err. As we have indicated, before us, the legality of Merrick's arrest was attacked only on the basis that the information establishing probable cause set out in the application for the arrest warrant was not sufficient because the veracity prong of *Aguilar* had not been satisfied as to the informant's credibility. We have found that the affidavit was sufficient to support a finding that the informant was credible. Therefore, the warrant was valid, and Merrick's arrest under its authority was legal. Inasmuch as his arrest was legal, the

claim that the statement given by him should have been suppressed as a fruit of an illegal arrest evaporates.

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by appellant.*

*Levine, J., dissenting:*

I respectfully dissent.

Before either an arrest or search warrant may be issued, the Fourth Amendment mandates that the complaining officer present information to a neutral and detached magistrate which would be sufficient to persuade a reasonable person that probable cause exists to support the warrant. *Whiteley v. Warden,* 401 U. S. 560, 564, 91 S. Ct. 1031, 28 L.Ed.2d 306 (1971); *Spinelli v. United States,* 393 U. S. 410, 415, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U. S. 108, 111, 113, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964). Information adduced in the affidavit accompanying an application for an arrest warrant must be such as would enable the commissioner to judge for himself the persuasiveness of the facts relied upon by the complainant to show probable cause. *Aguilar v. Texas,* 378 U. S. at 113; *Giordenello v. United States,* 357 U. S. 480, 486, 78 S. Ct. 1245, 2 L.Ed.2d 1503 (1958). Although the supporting affidavit need not set forth sufficient facts to sustain a finding of guilt, there must be more evidence than would arouse a mere suspicion in the mind of the commissioner. *Brinegar v. United States,* 338 U. S. 160, 174-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Mobley and King v. State,* 270 Md. 76, 81, 310 A. 2d 803 (1973), *cert. denied,* 416 U. S. 975 (1974).

Hearsay statements in the affidavit may support a finding of probable cause, provided there is a "substantial basis" for crediting the hearsay. *United States v. Ventresca,* 380 U. S. 102, 108, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965); *Jones v. United States,* 362 U. S. 257, 269, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). The meaning of "substantial basis" was explicated by the Supreme Court in *Aguilar v. Texas,* 378 U. S. at 114, and

elaborated upon in *Spinelli v. United States,* 393 U. S. 410. These decisions laid down a bifurcated standard for determining the constitutional sufficiency of an affidavit based in whole or in part on the hearsay declarations of a police informant. Under this two-pronged test, an affiant must supply the commissioner with facts to show 1) the foundation for the informant's conclusion regarding a suspect's guilt of the crime charged; and 2) the basis for the officer's conclusion that the informant was credible or his information reliable. *Spinelli v. United States,* 393 U. S. at 415; *Aguilar v. Texas,* 378 U. S. at 114; *Peterson v. State,* 281 Md. 309, 313, 379 A. 2d 164 (1977); *State v. Edwards,* 266 Md. 515, 519, 295 A. 2d 465 (1972). Since appellant concedes that the first element or "basis-of-knowledge" prong was satisfied in the present appeal, the only issue before us concerns the second element or "trustworthiness" prong.

An affidavit may meet the trustworthiness test in either of two ways. First it may contain information as to the individual declarant's credibility in the sense of his *personal* history of honesty and integrity or his *personal* reputation or character for veracity. In the present case, the declarant was a first-time informer. There was no evidence brought to the attention of the commissioner showing, for example, that Boone had given accurate information in the past or that he had some propensity for telling the truth as a result of moral or religious convictions. In short, on the record before us the commissioner could not have made a neutral and detached assessment of Boone's personal credibility.

But, as stated quite clearly in *Aguilar,* credibility is not the sole determinant of the trustworthiness of an informant's statement. In rare instances there may be circumstances surrounding the communication of an informant's declaration, which, when viewed from the perspective of common sense and practicality, render the statement inherently reliable, wholly apart from the character, reputation, history or background of the individual declarant. Thus, for example, a spontaneous statement of an uninvolved eyewitness or victim to a crime may be intrinsically reliable for purposes of *Aguilar-Spinelli,* even though nothing more

is known of the informant himself than his name and address. *See, e.g., Jones v. State,* 242 Md. 95, 100-101, 218 A. 2d 7 (1966); *King and Mobley v. State,* 16 Md. App. 546, 555-57, 298 A. 2d 446, *aff'd,* 270 Md. 76, 310 A. 2d 803 (1973).

In my view, however, there was nothing so compelling about the circumstances underlying the communication of Boone's statement to Officer McConville as would imbue his bare utterance with a degree of reliability sufficient to support a finding of probable cause. The majority, embracing without critical comment the views expressed by Chief Justice Burger in Part III of his plurality opinion in *United States v. Harris,* 403 U. S. 573, 583-85, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971), would apparently adopt a *per se* rule under which an identified informer would be deemed trustworthy for purposes of *Aguilar-Spinelli* whenever he gives a statement which technically constitutes a declaration against penal interest, as that term has been defined in the law of evidence. C. McCormick, *Handbook of the Law of Evidence* § 278 (2d ed. 1972); 5 J. Wigmore, *Evidence* §§ 1476-77 (3d ed. 1940). Since, by divulging appellant's involvement in the premeditated murder of Randolph Williamson, Boone admitted his own complicity in the crime, the majority concludes that his tip was inherently reliable, notwithstanding the fact that, save for Boone's identity, the commissioner had absolutely no basis for evaluating the informant's credibility.

I have no quarrel with the universally recognized view that a declaration against penal interest may be considered as a *factor* in establishing an informant's veracity under *Aguilar-Spinelli. E.g., United States v. Poulack,* 556 F. 2d 83, 87 (1st Cir.), *cert. denied,* 434 U. S. 986, 98 S. Ct. 613 (1977); *Wilson v. State,* 314 A. 2d 905, 907-908 (Del. 1973). And it may well be that such declarations could, in appropriate instances, constitute the exclusive predicate for a trustworthiness determination. But under no imaginable circumstances would I affirmatively label a statement as intrinsically reliable where, as here, the informant has, in the process of confessing his own participation in the criminal enterprise, attempted to place the blame on (or at least share the blame

with) a third party. In my opinion, statements of this nature are fraught with inherent untrustworthiness. The reasons for this are not difficult to divine. An informant who is himself under suspicion has powerful motives for seeking to inculpate a third party regardless of the truth or falsity of his information. As Mr. Justice Harlan cogently observed in his dissenting opinion in *United States v. Harris,* 403 U. S. at 595, an informant may give false or distorted information to the police in hopes of obtaining leniency, absolution, or other concessions for himself. Especially is this likely where the tipster is subject to prosecution for serious offenses carrying the possibility of severe penal sanctions. Furthermore, an accused informant may see the implication of another as an effective means of avenging some past wrong or injustice and thus may incriminate the third party out of sheer spite. *See* 4 J. Weinstein & M. Berger, *Evidence* ¶ 804 (b) (3) [03], at p. 804-95 (1977); Comment, 62 Nw. U. L. Rev. 934 (1968); *but see United States v. Miley,* 513 F. 2d 1191, 1204 (2d Cir.), *cert. denied,* 423 U. S. 842 (1975).

By identifying the dangers widely associated with statements of the sort given by Boone in the present case, I do not, of course, mean to imply that all such declarations are unreliable in fact. My point is, rather, that sufficient doubt exists as to the overall trustworthiness of such communications that they ought not to be relied upon as the *exclusive* basis for establishing the veracity of an informant in the context of assessing whether there was adequate probable cause to justify the issuance of an arrest warrant grounded solely on a tipster's uncorroborated hearsay accusations. At a minimum, the Fourth Amendment demands that there be some additional extrinsic evidence of the informant's trustworthiness before the warrant will issue. A contrary result would, in my estimation, make a mockery of *Aguilar-Spinelli*'s veracity requirement.

Accordingly, I would hold that the affidavit submitted by Officer McConville in support of the arrest warrant challenged in the instant appeal was constitutionally defective for lack of factual allegations sufficient to demonstrate the trustworthiness of the informant Boone. The judgment

of the Court of Special Appeals should therefore have been reversed with instructions to remand to the Circuit Court for Baltimore County for a new trial.

Judge Eldridge authorizes me to state that he joins this opinion.